[Cite as *State v. Adams*, 2015-Ohio-5038.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.      14CA010599 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CLARENCE ADAMS, III | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.      12CR084976 |

DECISION AND JOURNAL ENTRY

Dated: December 7, 2015

MOORE, Judge.

{¶1}   Appellant, Clarence Adams, appeals his conviction by the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}   On the early morning of April 8, 2012, two men assaulted L.T. as he walked down the street toward his home.  The vicious beating continued down the sidewalk, leaving a trail of blood as L.T.'s attackers pursued him.  After the family of a witness called 911, police found L.T.'s body near his own house.  They recovered his watch and cellular phone wrapped up in a hoodie that Mr. Adams' codefendant left with a longtime friend.  The coroner later determined that L.T. died from blood loss and multiple blunt impacts to the area of his head and neck.

{¶3}   Mr. Adams was charged with aggravated murder in violation of R.C. 2903.01(A) and 2903.01(B), with two accompanying death penalty specifications; murder in violation of

R.C. 2903.02(A) and 2903.02(B); aggravated robbery in violation of R.C. 2911.01(A)(3); and felonious assault in violation of R.C. 2903.11(A)(1). A three-judge panel found him guilty of felony murder in violation of R.C. 2903.02(B), aggravated robbery, and felonious assault, but not guilty of the remaining charges. The trial court merged the convictions for murder and felonious assault for purposes of sentencing and sentenced Mr. Adams to consecutive prison terms of life with the possibility of parole after fifteen years and eight years, respectively. Mr. Adams appealed.

II.

**ASSIGNMENT OF ERROR**

THE GUILTY VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. ADAMS' RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶4} In his sole assignment of error, Mr. Adams argues that his conviction for aggravated robbery is against the manifest weight of the evidence. We do not agree.

{¶5} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In our analysis, we are mindful that

"[c]ircumstantial evidence and direct evidence inherently possess the same probative value[.]" *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

{¶6} R.C. 2911.01(A)(3), which prohibits aggravated robbery, provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, or attempt to inflict, serious physical harm on another." Under R.C. 2913.01(K), the term "theft offense" includes the commission of a theft in violation of R.C. 2913.02. That statute, in turn, provides:

> No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception;
>
> (4) By threat;
>
> (5) By intimidation.

R.C. 2913.02(A). Mr. Adams has argued that his conviction for aggravated robbery is against the manifest weight of the evidence because the evidence at trial did not support the conclusion that he committed theft. Specifically, he has argued that the testimony of Jose T., who witnessed the attack on L.T., lacks credibility because his ability to accurately perceive events on the evening in question was compromised by poor eyesight, substance use, and lack of adequate light at the scene.

{¶7} Jose T. testified that he, his cousin Mike C., and several other friends and acquaintances, including Mr. Adams and Austin Diaz, met at Mr. Diaz's house in the early morning hours of April 8, 2012. Jose testified that he joined a group already assembled in a

garage, where all had been drinking. After some time, according to Jose, the group drove to a local convenience store. Jose recalled that his companions were "hyped up," and he hoped to "roll a joint * * * so we could all chill out[.]" Jose testified that the group drove to the home of an acquaintance that lived in the 1900 block of East 34th Street. Jose's cousin Mike C., who was injured, got out of the car. According to Jose, Mr. Diaz also got out of the car, but started following a man who was walking down the sidewalk. Jose testified that Mr. Adams followed when the man was four or five houses away.

{¶8} Jose testified that he got out of the car to see what was happening, then heard "a noise, like a smack sound" and saw that Mr. Adams and Mr. Diaz were beating and kicking the man violently. After reviewing his prior statement to police to refresh his recollection, Jose testified that he also saw Mr. Adams "getting down, bending over and shuffling through [the victim's] pockets" and heard Mr. Adams tell the victim to roll over. On cross-examination, Jose admitted that he "wasn't a hundred percent sure" that Mr. Adams had gone through the victim's pockets, but on redirect examination, he explained in further detail that he saw Mr. Adams "bend over and he was, like, doing something. I'm not a hundred percent sure if he was going in his pockets. * * * I could have sworn he was going through his pockets. That's what I thought."

{¶9} Jose admitted that he could not remember his last eye exam, but he also testified that he does not wear glasses. Although he had been drinking and had smoked one joint earlier in the day, he testified that he was not drunk at the time of the incident. Jose acknowledged that it was dark when the incident occurred, but testified that with the light available from the nearby streetlights, he was able to see what was happening from his vantage point. Other witnesses verified Jose's recollection about the available light, including police officers who were on the scene after Jose's sister called 911. Sergeant Mark McCoy, for example, recalled that there was

a "near full moon," "ample street lighting," and "a lot of house lights" when he arrived. Officer Matthew Bonkoski did not agree with defense counsel's assessment that it was "pretty dark," and he testified that it was his distance from the victim's body, not the available light, that prevented him from seeing it. Detective Ernie Sivert recalled that "it was dark outside because it was late in the evening, but the area was well-lit" by several streetlights.

{¶10} Other witnesses also supported Jose's testimony that he believed that he saw Mr. Adams going through the victim's pockets. Mike C. explained the events that occurred earlier in the evening in a manner consistent with Jose's testimony. Mike recalled that because his hand had been injured earlier in the evening, he left his acquaintances at the car and returned to the nearby home where he was living at the time. Mr. Diaz returned later, leaving behind a hoodie that, according to Mike, felt like it had a heavier object concealed inside. Mike testified that he later gave the police a watch along with the hoodie. Detective Sivert confirmed that a man's watch, a cellular phone with a broken screen, and a hoodie were recovered. The watch and cellular phone belonged to L.T. According to a forensic expert from the Bureau of Criminal Investigation, the examples of DNA found on the cellular phone were consistent with Mr. Adams' DNA, and he could not be excluded as the contributor of the DNA.

{¶11} This Court has reviewed the entire record, along with the credibility of the witnesses. Given the evidence at trial, we cannot conclude that this is the exceptional case in which a new trial is warranted with respect to Mr. Adams' conviction for aggravated robbery.

{¶12} Mr. Adams' assignment of error is overruled.

III.

{¶13} Mr. Adams' assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

DENISE WILMS, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.